IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SHANE GRIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-422-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On February 11, 2015, Michael Shane Griggs applied for Supplemental Security Income benefits and Disability Insurance Benefits alleging that he became disabled on December 1, 2013. R. 15, 286–93 & 304. His applications initially were denied. R. 136–53 & 157–66. After two hearings, an Administrative Law Judge ("ALJ") issued a decision on June 16, 2017 finding Plaintiff not to be disabled. R. 12–31.

Thereafter, the Appeals Council denied Plaintiff's request for review. R. 1–6 & 284–85. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, the court concludes that the Commissioner's decision is to be AFFIRMED.

**I. NATURE OF THE CASE**

Griggs seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits. United States District Courts may conduct

limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment.

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is a limited one. In fact, the court's sole function is to determine whether substantial evidence supports the ALJ's opinion and whether the ALJ applied the proper legal standards. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. § 405(g)). Thus, this court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If substantial evidence supports the Commissioner's decision, the district court will affirm even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355

F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The court also will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below

the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a) & 1382c(a)(3)(A)–(C). However, the law and regulations governing a claim for DIB and a claim for SSI are identical, and therefore claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3) & 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a) & 416.905(a). A person is entitled to disability benefits when the person is unable to

> [e]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) & 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520 & 416.920 (2010). The process asks:

(1) Is the person presently unemployed?
(2) Is the person's impairment(s) severe?
(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

>An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant still is able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also may contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ may either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor independently could limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was born in 1982 and was 34 years old at the time of the ALJ's decision. R. 12, 286, 289 & 304. He completed high school and had past relevant work as a convenience store cashier, fast food worker, and hand packer. R. 25, 103–04 & 308. Plaintiff alleged disability due to bipolar disorder, antisocial personality disorder, high cholesterol, and psychosocial tendencies. R. 307.

The ALJ found that Plaintiff's cholelithiasis, bipolar disorder, antisocial personality disorder, history of intermittent explosive disorder, and obesity were severe impairments that did not, alone or in combination, meet or equal the requirements of any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments). R. 18–20. The ALJ then found that Plaintiff had the RFC to perform a full range of medium work with nonexertional limitations. R. 20–25; *see* 20 C.F.R. §§ 404.1567(c) & 416.967(c) (defining medium work). Next, the ALJ found, based on the testimony of a VE, that Plaintiff could perform his past relevant work as a hand packer as well as other jobs that existed in significant numbers in the national economy. R. 25–27 & 103–08. Thus, the ALJ found that Plaintiff was not disabled from December 1, 2013 through the date of the decision. R. 27.

## V. MEDICAL HISTORY

On May 26, 2016, Griggs presented to Rene J. Britt, Ph.D. for a psychological and educational evaluation to assess his current level of functioning. R. 474. With respect to social history, Dr. Britt noted that Griggs "struggles with daily living skills . . . . His wife does 'everything' around [the] house . . . . He has very poor self-esteem. He does play

and interact to a limited extent with his son." R. 475. Dr. Britt recognized that at times Plaintiff had received treatment for Bipolar II Disorder, Anxiety, Antisocial Personality Disorder, and Intermittent Explosive Disorder. R. 476.

On mental status examination, Dr. Britt observed that Grigg's "[s]peech was overly talkative and rambling. Mood appeared dysphoric . . . . Stream of thought was rambling. Psychotic symptoms were not observed or reported. Memory appears fair. Judgment, insight and decision-making appear significantly impaired." R. 476. During her examination, Dr. Britt administered "the Personality Assessment Inventory to further and better assess his current symptoms. Results showed elevated levels of depression and bipolar II symptoms. Additionally, he is diagnosed with antisocial personality disorder. He has a history of intermittent explosive disorder." R. 479.

Based upon examination findings, Dr. Britt's diagnostic impression was Bipolar II Disorder, Antisocial Personality Disorder, and Intermittent Explosive Disorder by history. R. 474. Dr. Britt commented that Griggs "talked excessively and he had difficulty staying on track. He was rambling and provided an overwhelming amount of unrelated information." R. 479. Dr. Britt further opined that Griggs' "ability to understand, remember and carry out instructions appears moderately impaired. His ability to respond appropriately to supervision, co-workers and work pressures in a work setting appears severely impaired. Prognosis is guarded to poor." R. 479–80. Furthermore, at the hearing before the ALJ, psychological expert Dr. Cheryl Len testified that Plaintiff would have extreme limitations in dealing with others in the workplace. R. 40.

**VI. ISSUES PRESENTED**

1. Whether the ALJ erred by failing to address the medical opinions expressed by Dr. Britt that supported a disability finding?

2. Whether the ALJ erred by failing to conclude that the combination of his Bipolar Disorder, Antisocial Personality Disorder, and history of Intermittent Explosive Disorder met and/or medically equaled Listing 12.08?

3. Whether the ALJ improperly acted as both judge and psychological expert?

## VII. ANALYSIS

Plaintiff argues that the ALJ erred because he failed to provide reasons for refusing to accept Dr. Britt's medical opinion that Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures in a work setting was severely impaired, and he failed to state the weight he gave to Dr. Britt's opinion. R. 479–80. Indeed, the court recognizes that it is reversible error for an ALJ not to articulate the weight given to a non-treating physician's opinion or any grounds for discounting the report. *McClurkin v. Soc. Sec. Admin.,* 625 F. App'x 960 (11th Cir. 2015). However, an ALJ may discount the opinion of any physician if objective medical signs and diagnostic testing do not support it or if the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1158 (11th Cir. 2004).

The Commissioner argues that Dr. Britt's designation of Plaintiff's inability to respond to supervision, coworkers, and work pressures as "severe" was not supported by the evidence even to the extent it was consistent with Dr. Len's opinion of Plaintiff's "extreme" limitation in this area. With respect to the medical opinions expressed by Dr. Britt, the ALJ wrote the following:

> The Auburn Psychology Group, also a treating source, found NO (their emphasis) significant problems in the following areas: unusual thoughts or experiences, elevated mood or heightened activity, marked anxiety, problematic behaviors, problems with substance abuse or dependence. They noted that [he] is a high school graduate and that he denied academic difficulties throughout school. They did find that his ability to remember and carry out instructions was moderately impaired. *His ability to respond to supervision, coworkers and work pressures was severely impaired. We do find the severe impairments listed above.*

R. 24 (emphasis added). He further stated that "Dr. Britt indicated that the claimant had severe impairments in his ability to respond appropriately to supervision, coworkers and work pressure. Nonetheless, the undersigned finds that the evidence does not suggest greater than marked limitation in this domain." R. 19. Additionally, the ALJ assigned "little weight to Dr. Len's opinion that the claimant would have extreme limitations interacting with others." R. 24. In support of this conclusion, the ALJ stated "[t]his opinion is not supported by or consistent with the medical evidence of record. Additionally, there is generally no evidence that the claimant has ever been institutionalized or involuntarily committed due to his condition or evidence of extreme limitations." R. 24.

> With respect to the medical evidence of record, the ALJ wrote:
>
> The evidence reveals that the claimant has reported numerous complaints of worsening depression and feelings of anger; however, he reported that he was not taking his medication as prescribed. In addition, the evidence reveals that the claimant generally had normal sleep and appetite. He had cooperative behavior, alert cognition, thought process and perception was within normal limits, and he had generally normal insight and judgment. Furthermore, according to the claimant's self-report with Dr. Britt, . . . Some of his actions seem to be voluntary, not compelled by disease process i.e. "I was rude and abrasive." . . . Furthermore, the claimant testified that he has sought employment (indicating a belief that he could work if he obtained it) but was unable to procure any jobs.

R. 23. The court has reviewed the medical evidence, including East Alabama Mental Health Center records repeatedly noting that Plaintiff was cooperative, calm, and "motivated to change," that he "reports feeling better on medication," and that symptoms were largely normal while undergoing treatment. R. 22–24, 476, 501, 523, 525, 527, 547, 549, 551 & 553. Furthermore, as the ALJ discussed, Plaintiff's reports of significant symptoms and abnormal clinical signs regularly coincided with Plaintiff's noncompliance with his medication regimen. R. 22–24, 496–98, 519, 530, 534 & 539. Accordingly, the court concludes that the medical evidence does not support a diagnosis of extreme limitations in interacting with others and that the ALJ properly discounted expert testimony of extreme limitations in this area. *Crawford*, 363 F. 3d at 1158.

Plaintiff next argues that the ALJ erred by finding that Plaintiff's mental impairments did not meet or equal the criteria of Listing 12.08 (personality and impulse-control disorders). R. 18; *see* 20 C.F.R. pt. 404, subpt. P, app'x 1 § 12.08. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criterial of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F. 3d 1219, 1224 (11th Cir. 2002). Plaintiff's argument that he had extreme limitation in the broad functional area of interacting with others and thus met paragraph B criteria is based on Dr. Len's opinion and, by extension, Dr. Britt's opinion. However, as explained above, these expert opinions are due little weight because they are not supported by the medical evidence of record.

Plaintiff finally argues that the ALJ inappropriately substituted his judgment for that of a medical professional. Indeed, while the ALJ need not base his RFC on the assessment of a treating or examining physician, the ALJ cannot act both as judge and physician. *See Marbury v. Sullivan*, 957 F. 2d 837, 840-41 (11th Cir. 1992). Here again, the court concludes that this argument lacks merit because, as previously discussed, the ALJ discussed the record as a whole, which included largely normal findings and self-reports of decreased symptoms when Plaintiff took his prescribed medications. R. 20–25. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled.

## VIII. CONCLUSION

For these reasons, the court AFFIRMS the Commissioner's decision.

A separate judgment will be entered herewith.

DONE this 16th day of May, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE